**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**


**EMMERICH NEWSPAPERS, INCORPORATED**                                    **PLAINTIFF**


**v.**                                    **CIVIL ACTION NO. 3:23-CV-00118-HTW-LGI**


**SMARTNEWS INTERNATIONAL, INC.**
*d/b/a SmartNews, Inc.; d/b/a SmartNews*                                    **DEFENDANT**

**<u>ORDER</u>**

Before the Court are numerous motions filed by the parties in this case. These motions include:

1. Emmerich's First Motion for Leave to File First Amended Complaint [Doc. 26];

2. Emmerich's Substitute Motion for Leave to File First Amended Complaint [Doc. 64];

3. Emmerich's Motion for Leave to Add Defendant [Doc. 32];

4. Emmerich's Second Motion for Leave to Add Defendants [Doc. 65];

5. SmartNews' Motion to Stay Discovery [Doc. 28];

6. SmartNews' Motion to Bifurcate Discovery [Doc. 36];

7. SmartNews' Motion to Strike Rebuttal [Doc. 52];

8. Emmerich's Motion for Leave to File SurReply [Doc. 60]; and

9. Emmerich's Motion for Alternative Service Under FRCP 4 [Doc. 45].

The Court, having considered the submissions, the parties' arguments, the record and relevant law, discusses each of the motions below.

I.    **Summary of Facts**[1]

Plaintiff Emmerich Newspapers, Inc. ("Emmerich" or "Plaintiff") calls itself one of the largest privately owned newspaper chains in Mississippi. Complaint, Doc. [1] at 5. It claims to own numerous publishing companies that publish local newspapers, magazines, websites and phone books throughout the state. *Id.* at 5-6. Plaintiff asserts in most of its markets, it is the only news outlet that publishes local news, breaking news, information about arrest records, foreclosures, local sports, graduation ceremonies, local births, weddings and deaths. *Id.* at 6.

On February 14, 2023, Plaintiff filed this lawsuit against SmartNews International, Inc. d/b/a SmartNews, Inc. and/or SmartNews ("SmartNews" or "Defendant"), seeking damages for copyright infringement and violation of the Digital Millennium Copyright Act. Plaintiff alleges that SmartNews uses a web crawler to systematically copy articles from Emmerich's websites and then republish the articles on SmartNews's own web app. *Id.* at 1. Plaintiff asserts SmartNews republishes its articles verbatim and also offers snippets and diverts Emmerich's readers to SmartNews's website. *Id.* at 1-2.

According to Plaintiff, prior to filing this action, it sent cease and desist notices to SmartNews on three separate occasions. *Id.* at 2. Emmerich says all of its online articles include a copyright notice, but SmartNews ignored these "clear warning[s]." *Id.* Emmerich has filed for and obtained copyright registrations for approximately 2,400 articles and thirty (30) photographs that were republished by SmartNews. *Id.* at 3. Plaintiff alleges SmartNews has violated a host of federal copyright protection measures, and it argues that SmartNews has deliberately and willfully infringed upon its copyrights. *Id.*

---

[1] Factual summary derived from Plaintiff's version of the case facts, as set forth in the Complaint. *See* Complaint, Doc. [1].

## II.    <u>Pertinent Procedural History</u>

On March 24, 2023, Defendant SmartNews filed it Answer [9] to the complaint. On April 14, 2023, Defendant filed an Amended Answer, Counterclaim and Defenses [21]. Defendant/Counterclaimant brings counterclaims for declaratory relief, seeking to "clarify the facts [and] reveal the truth[,]" amongst other things. Defendant claims Plaintiff's copyright infringement and copyright management claims are not legitimate. *Id.* at 1. Further, it asserts Plaintiff has not filed this lawsuit genuinely seeking to restrict public access to its newspaper articles but instead seeking to "extract windfall and illegitimate statutory damages" and "as an illegitimate revenue generation strategy that rests upon false claims." *Id.* at 1-2. Defendant avers SmartNews offers a free legitimate app that is widely used on mobile devices. *Id.* at 2. Defendant contends Plaintiff has obtained registrations in works that it does not own, in an effort to deter the public from using materials that it has neither authored nor owns. *Id.* at 4. Defendant points out that Plaintiff seeks over $10 million in damages. *Id.* at 3.

On May 5, 2023, Emmerich filed its Answer to SmartNews's Amended Answer to Complaint/Counterclaim. *See* Doc. [24]. On May 30, 2023, the Court entered the Case Management Order ("CMO"), setting forth the deadlines in this case. *See* CMO, Doc. [25]. Between May 30, 2023 and August 7, 2023, the parties filed numerous motions and accompanying briefs to the motions. After the briefing periods had expired, the undersigned held a hearing on many of the pending motions. *See* Minute Entry, dated 10/06/2023. On November 29, 2023, the Court – while considering Defendant's Motion for Extension of Case Management Order Deadlines, which sought additional time for discovery, expert designations and dispositive Daubert motions – noted that the Court's rulings on the pending motions would impact the litigation in this matter. *See* Order, Doc. [86]. Thus, the Court also noted the voluminous nature of the motions and accompanying exhibits and elected to stay the case deadlines to allow time for resolution of the

motions. *Id.* at 2.

The motions are ripe for review, and this Court addresses each motion in turn below.

### III.    Discussion

### 1.    Motions for Leave to File First Amended Complaint [26], [64]

#### a.    Standard

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court" and that "leave shall be freely given when justice so requires." However, leave to amend is not automatic. *Bloom v. Bexar Cty.*, 130 F.3d 722, 727 (5th Cir. 1997). The decision whether to grant or deny leave is within the sound discretion of the district court. *Id.*; see also *Halbert v. Sherman*, 33 F.3d 526, 529 (5th Cir. 1994). The factors to be considered by the court in exercising its discretion include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, (and) futility of amendment." *Gregory v. Mitchell*, 634 F.2d 199, 203 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, when seeking to amend pleadings after a scheduling order's deadline to amend has expired, a more stringent standard applies. Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *Hinkle Metals & Supply Co. v. Compton's Appliance, Inc.*, No. 1:12CV17-HSO-RHW, 2012 WL 12965936, at *1 (S.D. Miss. June 21, 2012) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). The good cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *See Southwestern Bell Tele. Co. v. City of El Paso*, 346 F.3d 541, 547 (5th Cir. 2003) (quoting 6A

Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)). A court may extend time "for good cause" and "on a motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

Moreover, "[w]hile leave to amend must be freely given, that generous standard is tempered by the necessary power of the district court to manage a case." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (quoting *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir. 1987)). "An amendment that a party raises late in the pre-trial life of a lawsuit has a significant tendency to disrupt trial proceedings." *Id.* at 846. Thus, " [w]here ... considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (quoting *Stepanischen v. Merchants Despatch Transp.Corp.*, 722 F.2d 922, 933 (1st Cir. 1983)) (emphasis in original). *See also Little*, 952 F.2d at 846 (holding that "if the delay in filing a motion for leave to amend is particularly egregious, the burden shifts to the moving party to demonstrate that the delay was 'due to oversight, inadvertence or excusable neglect.'") (citing *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)). "A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)).

### b. *Argument*

#### i. *Plaintiff's First Motion to Amend/Correct Complaint [26]*

On May 31, 2023, Plaintiff filed a Motion for Leave to File First Amended Complaint [26]. Plaintiff files this motion in response to SmartNews's argument that certain obituaries in its Complaint were not original to Emmerich or copyrightable. Plaintiff states "rather than argue over

the details of how and when every obituary was prepared, Emmerich has now deleted obituaries which appeared anywhere else online." *Id.* at 1. Plaintiff moves this Court for leave to file its proposed First Amended Complaint that "substitutes a new Exhibit 'F,' the list of copyrighted articles at issue in this case." *Id.* It has also included in its proposed amended complaint an additional 150 articles with copyright decision dates that predate the filing of instant lawsuit but for which Plaintiff had not yet received the dated certificates. *Id.*

Defendant did not file a response to Plaintiff's Motion [26]. Local Uniform Civil Rule 7 provides that "[i]f a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed." L.U.Civ.R. 7(b)(3)(E). Furthermore, during the hearing, the Court noted there was no objection to Plaintiff's proposed amendment substituting Exhibit "F" with a new exhibit. Therefore, the Court finds that Plaintiff's First Motion to Amend/Correct Complaint [26], is hereby GRANTED. As to this motion, Plaintiff is ordered to file its corrected complaint within fourteen (14) days of this order.

### ii. *Plaintiff's Substitute Motion for Leave to File First Amended Complaint [64]*

On August 4, 2023, Plaintiff filed a Substitute Motion for Leave to File First Amended Complaint [64], reiterating its initial Motion [26] to amend and then advising that since the filing of the first Motion, SmartNews has produced an affidavit from a key employee, describing the specific responsibilities of SmartNews, Inc. and SmartNews International, Inc., identifying the management structure and establishing "that the two companies, along with the individual co-founders and co-owners, are joint tortfeasors and jointly and severally liable for the wrongful acts identified in the Complaint." *Id.* at 2. Noting these alleged developments, Plaintiff moves for leave to file its proposed Substitute Motion [64] for Leave to File First Amended Complaint, which has been revised to allege joint and several liability between SmartNews, Inc., SmartNews

International, Inc., Ken Suzuki[2] and Kaisei Hamamoto. *See* Exh. "A", Doc. [64] at 5-27.

Defendant files a Response [69] and Memorandum in Opposition [70] to Plaintiff's Substitute Motion for Leave to File First Amended Complaint. In its Response, Defendant argues the proposed amendments are untimely, unfounded and unnecessary. Doc. [70] at 1-2, 6. It also contends Plaintiff has provided no justifiable excuse for the undue delay and lack of diligence in filing this motion more than a month after the Court's June 29, 2023 deadline. *Id.* Further, Defendant argues Plaintiff seeks to amend the pleadings and add parties based on information that was either already known or readily available. *Id.* at 1-2, 7-8. Defendant argues Plaintiff's proposed amendments fail to allege sufficient facts to show that the corporate executives it seeks to add had control of the alleged infringing activity, and therefore it argues the amendment should not be permitted. *Id.* at 12.

Defendant also accuses Plaintiff of acting in bad faith. *Id.* at 17-18. It contends Plaintiff failed to conduct a reasonable pre-suit factual allegation and cannot establish good cause for adding the executives as separately named individual defendants based on vicarious liability regarding the copyright claims. *Id.* at 2. If added to this lawsuit, Defendant asserts Plaintiff's factual allegations against the corporate executives as individually named defendants will invite a motion to dismiss. *Id.* at 6. Thus, it contends the proposed new amendments are futile, replete with immaterial allegations and legal conclusions that undoubtedly fail to state a claim. *Id.* at 1. Defendant claims it will suffer undue prejudice if Plaintiff's substitute motion is granted, specifically by having to respond to multiple unnecessary motions. *Id.* at 16-17. Defendant urges this Court to deny Plaintiff's Substitute Motion, and it maintains Plaintiff failed to conduct a diligent investigation, which has resulted in serial motions to amend and is merely an attempt to cure this failure. *Id.* at

---

[2] Also referred to in pleadings as Kotoro Suzuki.

2.

Plaintiff files a Reply [74] in support of its Motion to Substitute [64]. Plaintiff addresses the applicable factors this Court considers when deciding whether leave to amend should be granted. Plaintiff argues the delays have been caused by Defendant, as it has lied, over and over again, about the role it played, and if it had been honest and conceded at the outset that Defendant does in fact have "full control and autonomy over the U.S. version of the SmartNews app" as it later admitted in an affidavit by one of its key officers, Emmerich would have filed the instant motion earlier. Doc. [74] at 5. Plaintiff asserts the delay was caused by the bad faith misrepresentations of Defendant. It also argues there is no prejudice to SmartNews from the proposed amendments, as Defendant has known from the outset the exact issues in this case. *Id.*

As to bad faith or dilatory motive, Plaintiff says Defendant committed bad faith, not Emmerich, and it avers Plaintiff "had absolutely no way of knowing that SmartNews, Inc. and SmartNews International, Inc. were jointly responsible for operation of the SmartNews app until receipt of the Suzuki Affidavit which flatly refuted everything SmartNews had said previously." *Id.* Plaintiff says there is no prejudice to SmartNews, as the cost of having to defend against additional claims does not constitute prejudice. *Id.* (citation omitted). It argues that nothing would be changed by adding the corporate officers or including a claim for joint and several liability, as Defendant has known of the issues in this case since its inception. *Id.* Finally, Plaintiff challenges Defendants contention that the proposed amendments are futile and would not survive a motion to dismiss. *Id.*

### c. *Analysis*

Plaintiff's Motion [64] must be analyzed at the intersection of Federal Rules of Civil Procedure 15 and 16. "The court should freely give leave when justice so requires," with certain exceptions. *Little*, 952 F.2d at 846. Because the Motion [64] was filed after the deadline for

amending the pleadings or joining parties, the more stringent standard of Fed. R. Civ. P. 16(b)(4), rather than the liberal standard of Fed. R. Civ. P. 15(a) applies to the instant motion. *S & W Enterprises, LLC v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003) (court of appeals "ma[d]e [it] clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired). "In determining whether good cause exists to amend the pleadings, 'this Court has broad discretion to preserve the integrity and purpose of the pretrial order.'" *Dawson v. Brumfield*, No. 522CV00022DCBBWR, 2024 WL 1861031, at *2 (S.D. Miss. Feb. 28, 2024) (citing *Warren Cnty.*, 2011 WL 6092450, at *2 (quoting *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 348 (5th Cir. 2008)). Here, Plaintiff seeks leave to amend its Complaint to allege joint and several liability between SmartNews, Inc., SmartNews International, Inc., Ken Suzuki and Kaisei Hamamoto and to add the named corporate executives as individual defendants to the action.

Upon consideration, this Court finds that good cause exists to allow the amendment sought. A request for leave to amend after the expiration of a deadline may be granted upon evaluation of the motion against the following factors: "1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enter., LLC v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003).

As to the first factor, Plaintiff admits that it failed to timely move to amend to include the proposed claims and defendants by the June 29, 2023 amendment and joinder deadline. However, it explains that prior to Defendant attaching an affidavit in response to another motion, Emmerich had "no way of knowing that SmartNews, Inc. and SmartNews International, Inc. were jointly responsible for operation of the SmartNews app." Doc. [74] at 5. A review of the docket reveals that Defendant attached the subject affidavit of Kotaro Suzuki as an exhibit to a response in

opposition to another pending motion, filed on July 21, 2023 – three weeks after the Court's amendment deadline. *See* Defendant's Response in Opposition, Doc. [54] (including "Attachment[]: #1 – Kotaro Suzuki Declaration"). Indeed, the present motion was untimely filed on August 4, 2023. Although the motion is untimely, the Court recognizes that Plaintiff's proposed amendments derive from new information discovered *after* the expiration of the pleading and amendment deadlines had run. The information relied upon by Plaintiff in its request for leave to amend was not available prior to the deadline. Notably, the fact that Plaintiff filed the instant motion for leave to amend within two weeks of learning of the new information suggests no dilatory motive or bad faith on Emmerich's part. This factor weighs in Plaintiff's favor.

The Court considers the second factor – the importance of the amendment. "Courts deem amendments to be important where they potentially provide additional grounds for a party to avoid liability or directly affect a party's prospects of ultimate success." *Harrison v. Aztec Well Servicing Co., Inc.,* No. 1:20-cv-00038-H, 2021 WL 5280956, at *4 (N.D. Tex. Nov. 12, 2021). Permitting the amendment here directly affects Plaintiff's prospects of ultimate success. Adding additional claims and defendants broadens Plaintiff's chances of fully developing the facts and theories in the instant case, while conserving resources and avoiding a second lawsuit. According to Plaintiff, the subject affidavit contains admissions contrary to the denials previously asserted by Defendant but not previously known to it. Specifically, Plaintiff claims Defendant "spent four months denying that named defendant SmartNews International, Inc. had anything to do with it and then filed an affidavit admitting exactly the opposite – stating that SmartNews International, Inc. has exclusive responsibility for the operation of the SmartNews app in the United States." Doc. [74] at 9. Plaintiff claims this is newly developed information learned after the amendment deadline.

The third factor seeks to determine whether allowing a late amendment will prejudice the

nonmovant. Here, Defendant asserts it would be prejudiced by having to respond to multiple unnecessary motions. On the other hand, Plaintiff argues Defendant would not be prejudiced, as it contends the cost of defending against additional claims does not constitute prejudice. It argues the litigation track would remain the same, because adding the corporate officers and the claims for joint and several liability involve issues that have been in the case since its inception. Although this case was filed in February of 2023, litigation was stayed while the case was still in the discovery phase. Thus, litigation was halted and the case is not progressing towards trial at this stage. Parties have not filed any dispositive motions. Upon resolution of the pending discovery motions, the scheduling order deadlines will be reset, and the case will proceed towards a brand-new trial date. Thus, allowing the amendments will not fundamentally prejudice or alter the nature of this case. See *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (noting that an amendment that "would fundamentally alter the nature of the case" may be denied). As such, the Court finds that this factor weighs in favor of granting leave to amend.

The fourth factor seeks to determine whether a continuance would cure any prejudice to Defendant if the late amendment is allowed. Defendant argues the proposed amendments would indeed require additional motion practice, which it contends is prejudicial. Since the case is presently stayed and the current trial date has been terminated, this factor weighs in favor of granting leave to amend. The Court reiterates that the case was stayed during the early stages, and there is no impending trial date at this time. While the parties will undoubtedly engage in additional discovery related to the new claims and defendants, this adds little burden to the litigation, as the Court's rulings on the pending motions herein foreshadow the likelihood of additional discovery and motion practice despite the amendment. This factor weighs in favor of the amendment.

Finally, Defendant urges denial of the motion, based on its belief that the proposed

amendments would not survive a motion to dismiss and are therefore futile. When deciding a motion to amend under Rule 15(a), the Court considers various factors, including . . . 5) futility of amendment." *Ferrara Land Mgmt. Mississippi, LLC v. Landmark Am. Ins. Co.*, No. 1:19-CV-956-HSO-JCG, 2020 WL 12655619, at *2 (S.D. Miss. June 11, 2020). "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Production Co.*, 234 F.3d 863, 872–873 (5th Cir. 2004). In the context of amended pleadings, futility means that "the amended complaint would fail to state a claim upon which relief could be granted." *Id.* at 873. To determine whether an amended pleading is futile, courts must apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (Internal citations omitted). Therefore, we must ask whether in the light most favorable to the nonmoving party and with every doubt resolved in its behalf, if the complaint states any valid claim for relief. *Id.* The court "may not dismiss a complaint under [R]ule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.* (internal citations omitted). *Pruco Life Ins. Co. v. Killingsworth*, No. 5:19-CV-55-DCB-MTP, 2019 WL 6331360, at *2 (S.D. Miss. Nov. 26, 2019).

Defendant contends, "Plaintiff's proposed amendments to add the Corporate Executives as new defendants in this case is futile because Plaintiff does not, and cannot, state legal claims against them in their individual capacities." Doc. [70] at 10. Defendant challenges the "proposed amendments alleging that the Corporate Executives are vicariously liable for copyright infringement solely because they are directors and officers of SmartNews, Inc." *Id.* at 11. Defendant argues these claims "fail because the theory does not apply to hold officers liable for the alleged conduct of a corporation or its employees." *Id.* And, it warns that if these amendments are permitted, it will invite a motion to dismiss.

Upon review of Plaintiff's proposed amended complaint setting forth the amendments – the addition of Ken Suzuki and Kaisei Hamamoto, as individually named defendants, and seeking damages from all defendants, jointly and severally, for copyright infringement and violation of the Digital Millennium Copyright Act – the undersigned finds that the claims appear justiciable on their face and are therefore not clearly futile. *See* Proposed Substitute First Amended Complaint, Exhibit "A", Doc. [64] at 5 – 27. Under a 12(b)(6) analysis, a court may only consider the pleading and any attachments to it. *Travis v. Irby*, 326 F.3d 644-48 (5th Cir. 2003). "Accordingly, in analyzing [Plaintiff's] motion to amend, the Magistrate [i]s bound to consider only the factual allegations found in the proposed amendments." *Smith v. Union Nat'l Life Ins. Co.*, No. 1:15-CV-9-KS-RHW, 2016 WL 7665910, at *1 (S.D. Miss. Feb. 24, 2016) (finding "it therefore cannot be error that [the magistrate judge] failed to consider exhibits plaintiff presented in opposition to the amendment, and plaintiff's objection on this issue will be denied.").

Having considered this factor, the record before the Court, and the standards of Rule 16(b) and Rule 15(a), the Court finds that this factor favors amendment, as the proposed amended complaint is not clearly futile.

In accordance with the foregoing analysis, Plaintiff's Substitute Motion for Leave to File First Amended Complaint [64] is hereby GRANTED. As to this motion, Plaintiff is ordered to file its substituted complaint within fourteen (14) days of this order.

### 2. **Motions for Joinder [32], [65]**

#### a. *Standard*

Rule 19 of the Federal Rules of Civil Procedure governs the compulsory joinder of parties. Under Rule 19, a party must be joined if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:" (i) "impair

or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

Rule 20 outlines the conditions for when parties may be joined. Specifically, a party may be joined as a defendant if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). A plaintiff may join a defendant to a case as long as both conditions are satisfied. Federal Rules of Civil Procedure Rule 21 addresses misjoinder and nonjoinder of parties. According to Rule 21, the court "may at any time, on just terms, add or drop a party," either on its own initiative or by motion. Fed. R. Civ. P. 21.

### b. Argument

#### i. Plaintiff's Motion for Leave to Add Defendant [32]

Plaintiff moves this Court for leave to join SmartNews, Inc. as a Defendant in this action. *See* Doc. [32]. Plaintiff submits that Defendant, in its Amended Answer, asserted that a "related party" actually owns and operates the SmartNews app. Doc. [32] at 1. And, it says since Defendant SmartNews International, Inc. identified the related party as SmartNews, Inc. and also advised that current Defendant SmartNews International, Inc. is a wholly owned subsidiary of SmartNews, Inc. that "th[is] court cannot accord complete relief among [the] existing parties." *Id.* (quoting Fed. R. Civ. P. 19). While Plaintiff admits that it does not know what role the current Defendant plays in the operation of the SmartNews app, it believes the current Defendant is SmartNews, Inc.'s only subsidiary registered to do business in the United States. *Id.* And it believes SmartNews, Inc. will

be subject to the long-arm jurisdiction of the State of Mississippi "based on its intentional conduct in the State." *Id.* at 2. Thus, it moves to join SmartNews, Inc.

Defendant opposes the joinder, arguing that the current Defendant is not the proper defendant in this case because it neither owns nor operates the app or service. *See* Defendant's Response in Opposition, Doc. [38] at 2. It asserts "even a modicum of pre-filing factual investigation . . . would have revealed that SmartNews, Inc., a Japanese company, operates the app and service." *Id.* at 1. Rather, Defendant states that Emmerich "opted for convenience and sued SmartNews International, Inc.," which is a U.S. subsidiary of the true operator of the app. *Id.* Defendant urges the Court to deny the motion, or alternatively, order that SmartNews, Inc. be substituted in the place of the current Defendant. *Id.* at 2.

While Defendant does not oppose substituting SmartNews, Inc. for SmartNews International, it objects to the motion to add SmartNews, Inc. as an additional defendant. *Id.* at 1. Defendant contends that Plaintiff has no good faith basis to keep the current Defendant in this case, and it points to Plaintiff's own motion to show that Emmerich admitted that it does not know what role SmartNews International, Inc. plays in the operation of the SmartNews app. *Id.* at 3 (quoting Pl.'s Motion for Leave to Join Defendant [32] at 3). Thus, Defendant argues Plaintiff had no factual basis upon which to allege that it has any involvement in the operation of the app and service. *Id.* at 1. Defendant also asserts that foreign businesses that engage only in interstate commerce, such as SmartNews, Inc., have no obligation to register with any secretary of state. *Id.* at 2. Counsel for Defendant claims he explained to Plaintiff's counsel on multiple occasions that Defendant is not the proper defendant in this case. *Id.*

Defendant argues it is improper to keep it in this case just "because presumably it was originally more convenient for service of process and the unsubstantiated possibility that

15

Defendant *might* become relevant once discovery commences." *Id.* at 3 (quotations in original). Rather than keep SmartNews International, Inc. in this case, Defendant suggests that Plaintiff voluntarily dismiss this Defendant without prejudice. *Id.* As a compromise to resolve the issues surrounding the proper defendant in the case, Defendant's counsel offered to accept service on behalf of SmartNews, Inc., which would allow Plaintiff to bypass compliance with the requirements under the Hague Convention for service of a foreign defendant located in Japan. *Id.* at 4. Defendant offered this in exchange for voluntarily dismissal without prejudice or substitution of SmartNews Inc. for the current Defendant. *Id.*

Plaintiff replies, urging the Court to grant the Motion to Join based on the assertions and admissions in Defendant's Response. *See* Plaintiff's Reply to Defendant's Response in Opposition, Doc. [42]. Plaintiff submits that the Defendant "admits that it is a proper party to this action and should be included as a Defendant" and that it "does not oppose bringing SmartNews, Inc. into this case as a substitution . . . and offered to accept service for SmartNews, Inc." *Id.* (quoting Defendant's Response in Opposition, Doc. [38] at 1). According to Plaintiff, the only question is whether it is necessary to simultaneously dismiss SmartNews International, Inc. from the suit. *Id.* at 2. It admits that defense counsel has made various statements regarding Defendant's role in the operation of the app, but it argues Defendant has refused to provide Plaintiff's counsel with any documentation (sworn testimony) of the claim that the named Defendant and the proposed additional defendant are totally different companies. *Id.* at 2-3. Thus, Plaintiff contends it has had no opportunity to develop a record of the relationship between parent and its subsidiary. *Id.* at 3.

Plaintiff reiterates its motion and requests that its motion to join SmartNews, Inc. be granted. It also requests that if this Court simultaneously dismisses SmartNews International, Inc.,

that this be done without prejudice so as to allow this defendant to be added at a later date, if appropriate. *Id.* Finally, Plaintiff asks that if this Court dismisses the named Defendant that it also compel defense counsel to accept service of process on SmartNews, Inc. *Id.*

Rule 19 provides that a person whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if, in that person's absence, the court cannot accord complete relief among existing parties. Fed. R. Civ. P. 19. A party is considered an indispensable party if the court finds that, as a matter of equity and good conscience, the lawsuit cannot proceed without them. *Toyota Motor Sales, U.S.A., Inc. v. Farr*, 237 F. Supp. 2d 703, 705 (S.D. Miss. 2002).

The substance of Plaintiff's underlying claim is that the operator of the SmartNews app has engaged in copyright infringement and violated the Digital Millennium Copyright Act by "systematically steal[ing] articles from Emmerich's websites and then republish[ing] the articles on SmartNews' own web app." Doc. [1] at 1. In response to the instant motion for joinder, Defendant has indeed admitted that the proposed defendant, SmartNews, Inc., "operates the app and service." Doc. [38] at 1. It even adds that the current defendant, "SmartNews International has no place as a defendant in this case[,]" and it suggests a substitution instead of a joinder. *Id.* at 2.

"Once an issue of compulsory joinder is raised, the court initially must determine whether the absent person's interest in the litigation is sufficient to satisfy one or more of the tests set out in the first sentence of Rule 19(a)." *Faloon v. Sunburst Bank*, 158 F.R.D. 378, 380 (N.D. Miss. 1994). In that determination, the court must look to the pleadings as they appear at the time of the proposed joinder. *Id.* Furthermore, "[t]here is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a)." *Id.* Rather, the "decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible

prejudicial effect of deciding the case without them." *Id.*

Here, upon review of the pleadings, it is apparent that this Court cannot accord complete relief among the existing parties without the joinder of SmartNews Inc., who is now the verified operator of the SmartNews app. In fact exclusion of SmartNews, Inc. subjects the current parties to risk of incurring double, multiple or otherwise inconsistent litigation costs and potentially other burdens or prejudice. Although the current Defendant opposes the joinder and requests substitution instead, this Court declines to entertain the possibility of substitution at this juncture. It is expected that once SmartNews, Inc. is joined and the parties engage in discovery, that the case will develop further and many issues become clear, then there will likely be a motion to dismiss SmartNews International.

In accordance with the foregoing analysis, *Plaintiff's Motion for Leave to Add Defendant* [32] is hereby GRANTED. As to this motion, Plaintiff is ordered to file its substituted complaint, joining SmartNews, Inc., within fourteen (14) days of this order.

ii.    *Plaintiff's Second Motion for Leave to Add Defendants [65]*

Plaintiff files a Second Motion [65] for leave to amend its complaint. In this subsequent motion, Plaintiff moves to add as defendants Suzuki and Hamamoto. It claims the Defendant revealed in an affidavit that Suzuki is the President, the CEO, and the sole director of SmartNews, Inc. Doc. [65] at 2 (referencing the Suzuki Affidavit attached to Defendant's Response in Opposition to Motion for Alternative Service [54-1]). According to Plaintiff, the subject affidavit also revealed that Hamamoto is co-founder and CFO of SmartNews, Inc. *Id.* Thus, Plaintiff seeks to join these two defendants based upon their roles as corporate officers. *Id.* Plaintiff argues that Suzuki and Hamamoto had the right to control the activities of both corporate defendants, and therefore, these officers "may be held jointly and severally liable with the corporation." *Id.*

Essentially, Defendants make the same arguments here that they advanced in response to Plaintiff's Substitute Motion for Leave to Amend [64]. *See* Response in Opposition to Plaintiff's Second Motion for Leave to Add Defendants and Amend Complaint, Doc. [71]. It contends this motion is also untimely and that it proposes amendments that are futile, unnecessary, brought in bad faith and would cause undue prejudice to Defendant. *Id.* at 1. Specifically, Defendant contends Plaintiff's motions were filed more than a month after the deadline to add new defendants and almost six months after the original complaint. Doc. [72] at 4. Defendant also argues Plaintiff cannot establish good cause for the delay. *Id.* at 1-2. Defendant contends Plaintiff unduly delayed in seeking to add the corporate officers. *Id.* at 6. It argues Plaintiff "either knew all the allegedly 'new' information about the proposed new defendants" and failed to timely name them or failed to conduct a reasonable investigation prior to filing the lawsuit. [71] at 2. It argues Plaintiff could have easily known about the corporate executive in and their respective roles since day one. *Id.* at 6.

Defendant also challenges the alleged claims against Suzuki and Hamamoto, arguing that Plaintiff has not alleged sufficient or specific facts regarding their conduct to establish viable legal claims against them in their individual capacities. [71] at 2. *Id*. Defendant also says the proposed amendments are unnecessary and therefore, unimportant; they aver that the case is a straightforward case against SmartNews, Inc. only. *Id.* It points out that Plaintiff cited to SmartNews's website in its amended complaint, when it added information about the corporate executives and their roles in founding SmartNews in 2014. [72] at 9. Thus, it contends the information regarding the corporate executives is "obviously not new" and it argues Plaintiff cannot credibly represent such to this Court. *Id.* (Emphasis in original).

Defendant argues the proposed amendments do not and cannot state a claim against the

corporate executives in their individual capacities. *Id.* at 10. It contends the proposed amended complaint does not add any factual allegations of specific conduct by the corporate executives, justifying liability in their personal capacities based vicarious liability. *Id.* at 11-12. Therefore, it alleges the proposed amendments would be futile and fail to survive a Rule 12(b)(6) motion. *Id.* It also argues Plaintiff's claims of vicarious liability are based solely on the corporate executives' roles as directors or officers and must fail because the theory does not hold officers liable for the alleged conduct of a corporation or its employees. *Id.* Defendant asserts that Plaintiff's proposed amendments merely make conclusory assertions regarding the corporate executives' control of the alleged infringing activity but that the amendments neither allege sufficient facts nor show sufficient direct financial interest from the alleged infringing activities. *Id.* at 13.

Finally, it argues bad faith due to Plaintiff's lack of diligence, and it objects to continuing the scheduling order. *Id.* at 16. Defendant characterizes these motions as a bad faith tactic meant to cause undue prejudice to Defendant and SmartNews, Inc. *Id.* It says Plaintiff's lack of diligence and its failure to identify, name and serve the correct party has caused substantial and undue prejudice, as Defendant has had to brief multiple unnecessary motions, which increased litigation costs. *Id.* at 16-17. Defendant urges this Court to deny Plaintiff's proposed amendment seeking to add the corporate executives.

Plaintiff's Reply [75] mirrors its reply to Defendant's response in opposition to Plaintiff's first motion for leave to amend. Again, Emmerich walks through the five factors considered when deciding whether leave to amend should be granted. First, Plaintiff claims the requested amendment causes no undue delay, as it notes that the subject motion was filed fourteen days after the Suzuki affidavit, which it proclaims was Emmerich's first indication of the joint responsibility. *Id.* at 5. Second, Plaintiff attributes any bad faith to Defendant, and it says there is no dilatory

motive, as it is not seeking any change to the scheduling order. *Id.* at 5-6. It states the third factor

is inapplicable. *Id.* at 6. Fourth, Plaintiff argues there is no prejudice to the opposing party because

the issues would remain the same, and nothing would be changed by adding the corporate officers

as defendants. *Id.* Finally, it argues both proposed amendments to the Complaint would "easily

survive a motion to dismiss." *Id.* at 7. It contends "the allegations of personal liability of the two

corporate officers . . . are based on well-established Fifth Circuit precedent imposing liability on

officers who . . . have the ability to direct the actions of the company and . . . have a vested financial

(i.e. ownership) interest in the company." *Id.* at 7-8.

Plaintiff says it is not necessary for it to prove its case at the pleading stage. *Id.* at 8. It avers

that Emmerich has "indisputably met the threshold to allege facts, that if taken as true, would

establish liability if proven." *Id.* Plaintiff contends that it has alleged sufficient factual matter to

state a claim to relief that is plausible on its face. *Id.* at 9. And therefore, it argues "Emmerich has

every right to pursue every responsible party for joint and several liability and then . . . determine

which one has the ability to pay. *Id.*

As previously noted, Rule 19 of the Federal Rules of Civil Procedure governs the

compulsory joinder of parties. Rule 20 outlines the conditions for when parties may be joined.

Specifically, a party may be joined as a defendant if: "(A) any right to relief is asserted against

them jointly, severally, or in the alternative with respect to or arising out of the same transaction,

occurrence, or series of transactions or occurrences; and (B) any question of law or fact common

to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). A plaintiff may join a

defendant to a party as long as both conditions are satisfied. Rule 21 addresses misjoinder and

nonjoinder of parties. According to Rule 21, the court "may at any time, on just terms, add or drop

a party," either on its own initiative or by motion. Fed. R. Civ. P. 21. While a party to a lawsuit

generally has considerable freedom regarding who they may join, questions of futility arise when considering agents or employees of an already named party. This is particularly relevant in cases involving a corporation and the corporation's officers or shareholders. To hold the corporation's officers personally liable in a lawsuit, plaintiffs must "pierce the corporate veil." Courts require this because the corporate structure was primarily established to protect individual investors from personal liability. However, in certain circumstances, courts may pierce the corporate veil and hold individuals accountable for the corporation's actions.

Therefore, in most cases, when the defendant is a corporation, the corporation itself is liable and not its individual members. Courts have distinguished copyright infringement and typically do not require plaintiffs to pierce the corporate veil to hold individuals liable. The Fifth Circuit has repeatedly stated that "requiring a piercing of the corporate veil" in infringement cases "would be putting the cart before the horse." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1349–50 (5th Cir. 1994). For federal copyright infringement, "it has long been established that there can be individual liability for infringing activity." *Luxottica Group., S.p.A. v. Lollis LLC*, No. 5:21-CV-47-KS-JCG, 2021 WL 5074653, at *1 (S.D. Miss. July 29, 2021). Even though an individual's actions "on behalf of the corporation may lead to liability for that corporation under the doctrine of respondeat superior, 'it does not relieve the individuals of their responsibility.'" *Id.* (quoting *Mead Johnson & Co. v. Baby's Formula Svc., Inc.*, 402 F.2d 19, 23 (5th Cir. 1968)).

When a corporation is accused of copyright infringement, "this infringement was caused by some one or more persons either officers or employees of the corporation who caused the act to be done." *Id.* Infringement can occur when an individual "performs the act or does the things that the patent or trademark" or copyright law "protects against." *Id.* To survive the early stages of a lawsuit, the plaintiff only needs to plead that the officer of the corporation "actively and

knowingly assisted with his corporation's alleged infringement activities." *Advantage Media Group. v. Smart Discipline, LLC*, No. CV 09-320-A-M2, 2010 WL 11538262, at *5 (M.D. La. Jan. 12, 2010).

Courts often apply a two-prong test to determine when an individual can be held jointly and severally liable for copyright infringement. Corporate officers can be held jointly and severally liable with the corporation if the officer had, "(1) the right and ability to control the infringing activity; and (2) a direct financial interest in that activity." *Broad. Music, Inc. v. Tex Border Mgmt., Inc.*, 11 F. Supp. 3d 689, 694 (N.D. Tex. 2014).

Here, the Court applies the two-prong test for individual liability to each of the corporate officers separately. Plaintiff asked for leave to file a *Substitute First Amended Complaint*. In the substituted complaint, Plaintiff asserts various allegations against the two corporate officers it wishes to join as defendants, Ken Suzuki and Kaisei Hamamoto. Plaintiff claims that Ken Suzuki is "the President and sole director of SmartNews International, Inc.," and the "co-founder, co-owner and Chief Executive Officer of SmartNews, Inc." *Substitute First Amended Complaint*, [64] at 9, ¶ 16. Additionally, Plaintiff alleges that Suzuki is "responsible for the vision and strategy of SmartNews," "still serves as the company's CEO," and oversees its product vision, strategy, and corporate operations. *Id.* at ¶ 28. Plaintiff also claims that Suzuki "is responsible for the massive growth of the company." *Id.* Most of this information was obtained from the corporation's website and interviews done by Suzuki. Plaintiff specifically alleges that Suzuki "has control over the day-to-day activities of the corporate defendants and the right and ability to control the infringing activities alleged herein," and that he "has a direct financial interest in the infringing activities of both companies." *Id.* at ¶ 29. These allegations refute Defendant's claims that Plaintiff solely relies on Suzuki's role as CEO. Rather, Emmerich directly alleges the two prongs of the test

accompanied with this supporting information.

Given that Plaintiff alleges in the Substitute First Amended Complaint that Suzuki both (1) had the ability and right to control the infringing activity and (2) had a direct financial interest in the infringing activity, the Court at this juncture must permit Plaintiff to join Suzuki as an individual defendant to be jointly and severally liable with SmartNews, Inc. and SmartNews International, Inc. The undersigned does note that without more detailed information supporting each prong of the test, Plaintiff may later struggle to establish that Suzuki should be held jointly and severally liable.

Similarly, Plaintiff alleges that Kaisei Hamamoto is the "Chief Operating Officer and Chief Engineer of SmartNews, Inc." *Substitute First Amended Complaint*, [64] at 9, ¶ 17. Pulling from the corporate website, Plaintiff provides that Hamamoto "has been interested in aggregating massive amounts of information from the Internet and transforming them into effective visualizations that help people to better understand the world." *Id.* at ¶ 30. Plaintiff alleges that Hamamoto, along with Suzuki, "has control over the day-to-day activities of the corporate defendants and the right and ability to control the infringing activities alleged," and "as a co-owner of SmartNews, Inc. (the parent company of SmartNews International, Inc.), he has a direct financial interest in the infringing activities of both companies." *Id.* at ¶ 31.

While the Court finds that the allegations against Hamamoto are somewhat less detailed than those against Suzuki, it finds that Plaintiff still specifically alleges that Hamamoto (1) had the ability and right to control the infringing activity and (2) had a direct financial interest in the infringing activity. Again, given that Plaintiff asserts that Hamamoto's activities satisfy these two prongs and provides some supporting facts, the Court shall allow Plaintiff to join Hamamoto and present further evidence to establish his jointly and several liability with SmartNews.

Given the liberality in joining parties, the potential to hold individual corporate defendants jointly and severally liable with the corporation, and Plaintiff's allegations regarding each prong in the *Substitute First Amended Complaint*, the joinder of Suzuki and Hamamoto shall be allowed. Thereby, this Court, pursuant to Rule 21 of the Federal Rules of Civil Procedure, hereby GRANTS Plaintiff's motion to join the corporate officers. As to this motion, Plaintiff is ordered to file its amended complaint, joining as defendants Suzuki and Hamamoto, within fourteen (14) days of this order.

### 3.  Discovery Motions [28], [36]

#### a.  Argument

##### i.  *Defendant's Motion to Bifurcate Discovery [36]*

Defendant moves to bifurcate discovery to "first allow discovery exclusively into the validity of Plaintiff's alleged ownership of the asserted copyrights before any further discovery is conducted." Defendant's Motion to Bifurcate Discovery, Doc. [36] at 2.  Specifically, Defendant requests to conduct discovery in two phases: 1) on Emmerich's ownership of the copyrights it asserts in this action, and then 2) discovery on issues of infringement, defenses to infringement, and remedies. *Id.* at 1. Defendant asserts that Plaintiff filed its first set of discovery requests on May 31, 2023, seeking wide-ranging discovery regarding every one of the 2,345 claimed copyrighted works. *Id.* "Given the facially questionable validity of many of Plaintiff's claimed copyrights," Defendant seeks to save the parties and this Court time and resources. Doc. [37] at 2.

Thus, it lists out and analyzes factors that this Court should consider, such as the severability of the issues, the extent to which resolving a certain issue first would be dispositive or aid in settlement negotiations, judicial economy and efficiency, and potential prejudice to the parties. It contends that all these factors weight in favor of bifurcation. First, Defendant alleges

that severing the issues of copyright ownership and infringement will avoid unnecessary confusion or potential prejudice. *Id.* at 3. Defendant says the "existence of a valid copyright and the right of the plaintiff to enforce that copyright are entirely distinct questions from whether the copyright has been infringed[,]" and that determining the scope of the valid copyright first will assist the parties and the Court to narrow the relevant issues. *Id*. Next, Defendant encourages the proposed bifurcation, stating that focusing on the first phase of discovery allows both parties to prepare dispositive motions to resolve what it calls the threshold issue. *Id.* at 4. Defendant also claims bifurcation aids the parties in potential settlement negotiations by eliminating unnecessary or duplicative claims and allows more accurate assessment of potential financial costs. *Id.* Third, Defendant endorses its phased discovery plan; it asserts that bifurcation promotes judicial economy by saving considerable time and resources. *Id.* at 4. Defendant states it would not be forced to engage in burdensome discovery on potentially hundreds of alleged copyrighted works. *Id.* at 4-5. Finally, Defendant claims a bifurcation of discovery poses no risk of potential prejudice, as it contends both parties will benefit from a determination of the validity of the copyrights. *Id.* at 5. Defendant also argues bifurcated discovery will allow the parties to focus on the preliminary issue of Plaintiff's claims of infringement on the copyrights actually owned, which it says "is relatively less complicated (and should requires a shorter discovery period) than the infringement and damages issues." *Id.* at 5-6.

Plaintiff, in its Response in Opposition [43] contends this motion, like Defendant's Motion to Stay Proceedings, is baseless and should be denied. Plaintiff's Response in Opposition to Motion to Bifurcate [43], [44]. Plaintiff challenges the Defendant's phased discovery plan and argues the Defendant cites to no case law from the Fifth Circuit or Mississippi federal district courts to support its motion to bifurcate discovery. Doc. [44] at 2. Plaintiff argues bifurcation is

not warranted here, and it cites to this Court's decision in *Brown Bottling Grp., Inc. v. Imperial Trading Co.*, No. 319CV00142HTWLGI, 2022 WL 4110918, at *5 (S.D. Miss. Sept. 7, 2022). *Id.* Plaintiff quotes language in *Brown Bottling*, arguing that "it would be severely prejudicial here to require Emmerich 'to pursue its case at the pace and direction chosen by' SmartNews, which would give SmartNews 'a faster track to potential dispositive motions, while freezing [Emmerich's] exploration of its own claims." *Id.* (Quoting *Brown Bottling* at *6). Plaintiff contends Defendant's phased discovery plan would not resolve all the claims at issue but would cause needless delay, expense, time and undue prejudice to the Plaintiff. *Id.* (Citation omitted).

Plaintiff also contends the authority relied upon by Defendant refers to bifurcation of trials rather than discovery. *Id.* at 2-3. Emmerich argues Defendant's Motion is based on pure speculation that there are "potentially hundreds" more articles that are not copyrightable, but it contends this is not sufficient basis for precluding Plaintiff's right to obtain discovery in an expeditious manner. *Id.* at 4 (quotations in original). It asserts Defendant has failed to identify any issue that "may be determinative of the case" which would justify staying discovery on other matters, as proposed in Defendant's requests for bifurcation. *Id.* Plaintiff argues that SmartNews "wants the ratchet to work in one direction in a bifurcated discovery process. It wants to reduce the likely settlement amount by eliminating problematic copyrights while preventing Emmerich from increasing the likely settlement amount by adding additional DMCA claims." *Id.* at 5. Plaintiff asserts that its claims under DMCA do not hinge on copyright registration, and this makes it impossible for Defendant to file a dispositive motion based on anything it may discovery in a bifurcated process focused solely on copyright registrations. *Id.*

Further, Plaintiff argues the information sought in its discovery requests is not as laborious as Defendant claims, as the information is stored in SmartNews' database and can be easily

retrieved. *Id.* at 6. Further, Plaintiff submits that Defendant does not suggest that all of Plaintiff's copyright registrations of invalid, and it contends Defendant simply wants the opportunity to reduce the number of copyright infringement claims at issue while Emmerich "stands on the sidelines with its hands tied." *Id.* Plaintiff argues it would be severely prejudiced by the requested bifurcation. And it urges this Court to deny the request, as it asserts Defendant makes no claim that the proposed bifurcation will lead to a dispositive motion, only that it might strengthen settlement negotiations. *Id.* at 8. And it argues this is not adequate justification for the bifurcation. *Id.* Emmerich asks that Defendant's Motion be denied, as it contends SmartNews failed to meet the basic tests provided in Rules 26(c) and 42(b) of the Federal Rules of Civil Procedure, and that there is no good cause for the requested relief. *Id.*

In its Reply [50], Defendant notes that Plaintiff has alleged that Defendant infringes and removes copyright management information in thousands of copyrighted materials registered and owned by Plaintiff. Since the number of copyrighted materials is likely to grow as Plaintiff asserts new claims, Defendant argues bifurcated discovery would allow the case to be streamlined to focus on discovery and motion practice on the registered copyrights first. *Id.* at 1. Defendant also asserts that bifurcating discovery is the most "simple and "common-sense relief" as it allows parties to first establish valid ownership of copyrights at issue, and that the second step is to engage in discovery on infringement, damages and other defenses for a narrowed set of copyrighted works. *Id.* Defendant states that many of Plaintiff's asserted copyright registrations are "facially suspect" and actively misleading *Id.* at 2. Thus, it seeks bifurcated discovery to first establish the legitimacy of the copyrights, before engaging in broader discovery. *Id.* Defendant notes that since this lawsuit was filed and Defendant challenged several of the copyrights, Plaintiff has "removed any article that could be 'even remotely questionable,'" and it contends this shows that Plaintiff pursued false

registrations. *Id.* at 3. Defendant reiterates its belief that the first order of business should be to determine which, if any, of the copyright registrations are truly for Emmerich's original works. *Id.* at 5. And after this is complete, Defendant says the parties could proceed to more generalized discovery. *Id.* at 8.

Plaintiff has filed a Sur-Rebuttal (Sur-Reply) to Defendant's Motion to Bifurcate to address the "four allegedly problematic articles [addressed] in [Defendant's] Reply brief rather than in its original Motion." Doc. [51] at 1. Plaintiff argues that Defendant has identified four articles out of 2,201 copyrighted articles that it alleges are questionable in its pursuit of bifurcation of discovery. *Id.* Plaintiff offers to "gladly drop those four articles from its list without argument . . . in order to move this case forward." *Id.* As for the specified articles, Plaintiff argues the four articles hardly demonstrate the significant number of articles that are allegedly improperly registered. *Id.* Plaintiff admits that it does not know every article republished by Defendant, but this is why it requested that SmartNews produce a complete list of the articles it took. *Id*. at 4. Plaintiff admits that it does not know how many or which articles have been republished from its websites, but that SmartNews does know. *Id.* Plaintiff contends Defendant is attempting to avoid or postpone telling the truth about the depth and breadth of its wrongful actions. *Id.* Plaintiff states, based on the evidence to date well over 99% of the articles covered by Emmerich's discovery request were original to Emmerich and therefore subject to copyright protection. *Id.* Thus, it renews its opposition to Defendant's Motion to Bifurcate.

 ii.    *Defendant's Motion to Strike Rebuttal (Sur-Reply) [52]*

Defendant moves this Court to strike Plaintiff's Sur-Rebuttal, arguing that the briefing on its Motion to Bifurcate had concluded, pursuant to the local rules and federal rules. Doc. [52] at 2. Defendant argues Plaintiff filed this improper and unauthorized rebuttal, in a desperate attempt to insert new issues and arguments that it failed to raise in its Response. *Id.* at 3, ¶12. Further,

Defendant argues Plaintiff's Sur-Rebuttal did not raise any new issues, rather it seeks to cloud the issues by inserting newfound fact-finding arguments that were available when Plaintiff filed its Response. *Id.* at 1-3.

Plaintiff files both a Response in Opposition [62] to the motion to strike and a Motion for Leave to File Sur-Reply [60], making identical arguments in both filings. The Court takes the two together, as a ruling on one will also resolve the other. Essentially, Plaintiff argues Defendant strategically waited until filing its Reply [50] to mention for the first time the existence of five alleged improperly registered articles. Doc. [63] at 1. Plaintiff argues the rules provide that Defendant's Reply was limited to arguments raised in Plaintiff's Response, not new arguments. *Id.* at 1, 3. Thus, Plaintiff asks this Court to either allow it to submit its previously filed Sur-Reply or ignore the five articles filed by SmartNews in its Reply. *Id.* at 4. Plaintiff notes that it recognizes that sur-replies are not favored; however, it points out that this scenario necessitates such since Defendant raised new arguments in the reply. *Id.* at 2. In support of its position, Plaintiff points to a recent case from this district, wherein the Court granted the relief in a similar scenario. *Id.* (citing *Randall v. Volvo Car USA* No. 3:22-CV-414-CWR-FKB, 2023 WL 1073703, at *2 (S.D. Miss. Jan. 27, 2023). Plaintiff asserts it could be reversible error to deny Emmerich's motion and allow it to address Defendant's new arguments. *Id.* at 3.

In its Reply [67], Defendant reiterates the arguments set forth in its Motion to Strike [68]. Again, the Court takes the two together. Defendant argues that Defendant's "after-the-fact Motion for Leave to File Sur-Reply" constitutes an apparent concession of the Defendant's arguments. Doc. [67] at 2. Defendant contends the five articles identified in its Reply were not new arguments or evidence, as the articles were taken from Plaintiff's own pleadings. *Id.* at 4. Defendant also argues that the cases relied upon by Plaintiff do not support Emmerich's position. Defendant

contends *Randall v. Volvo* is distinguishable from the instant matter. *Id.* at 5. Defendant also submits that Plaintiff's Sur-Rebuttal contains new factual allegations that are not found in the complaint that should be stricken. *Id.* at 7. Defendant also argues that Plaintiff improperly seeks to litigate the validity of its copyrights on a motion to bifurcate discovery. *Id.* at 7-8. It asks that Plaintiff's surreply be stricken and that Plaintiff's motion for leave to file a surreply be denied.

### b. Analysis

Defendant asks this Court to bifurcate discovery such that it can be conducted in two phases. "Trial courts are afforded 'broad discretion' in 'balancing the interests of both sides while looking for a discovery plan that reasonably fits the particular demands of the case.'" *Hawkins v. Miss. Farm Bureau Cas. Ins. Co.*, 2018 U.S. Dist. LEXIS 212445 *1 (S.D. Miss. Dec. 18, 2018) (quoting *Winkler v. Sunbelt Rentals, Inc.*, No. 3:12-CV-3789-B, 2014 WL 12596498, at *4 (N.D. Tex. July 10, 2014)). Rule 26 affords trial courts ample authority to control the sequence and timing of discovery. *EEOC v. Lawler Foods Inc.*, 128 F. Supp. 3d 972, 974 (S.D. Tex. 2015). "'[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided.' This principle of judicial parsimony is often invoked, for example, to justify postponing discovery on damages until liability has been established." *Id.* (quoting 8A Wright and Miller, Federal Practice and Procedure § 2040 (3d ed. 2010)).

Upon consideration, the Court determines that bifurcation of discovery in the manner sought by the Defendant is not appropriate in this action, because it will cause undue delay, inefficiency, and also waste resources. As set forth in the rulings above, this Court shall allow Plaintiff to amend its complaint to add claims and join additional parties. Defendants repeatedly noted that this case is still in the early stages of discovery, and this Court agrees. That said, the addition of the new claims and joinder of the individual defendant will undoubtedly result in

additional discovery and further development of both the claims and defenses, all of which can occur simultaneously. This Court is not persuaded that the issues must be severed. Further, the Court finds that the proposed sequence of bifurcation will unfairly prejudice the Plaintiff and will not further the interests of judicial economy or fairness. *See Bunch v. Metro Cas. Inc. Co*. 2010 U.S. Dist. LEXIS 92104 *6 (S.D. Miss. Aug. 5, 2010). Thus, the Court concludes that bifurcation of discovery would not further convenience or avoid prejudice in this case and, therefore, DENIES the Defendant's Motion to Bifurcate Discovery [36].

As for Defendant's Motion to Strike Plaintiff's Sur-Reply [60], the Court first notes that it is within the Court's discretion to grant or deny additional briefing. *See Univ. of Miss. Med. Ctr. v. Sullivan*, No. 319-CV-459-CWR-LGI, 2021 WL 5414301, at *1 (S.D. Miss. Oct. 7, 2021). Rule 7 of the Local Uniform Civil Rules accounts for the filing of a motion, a response, and a reply, and leave of court is required to file an additional brief because the movant is generally entitled to file the last pleading. *Id.* However, if the movant raises new arguments in the reply that went beyond rebutting the response, it might be appropriate for the Court to *allow* a surreply. *Id.* (Emphasis added). While the Court admonishes Plaintiff for filing a surreply without seeking leave of the Court, it also recognizes that the parties fully briefed their arguments on Defendant's subsequent Motion to Strike said surreply. As such, the Court concludes that both parties had the benefit of setting forth their positions. Furthermore, because this Court has considered all the briefing related to the surreply, the undersigned is sufficiently persuaded to grant Plaintiff's motion for leave to file a surreply. Plaintiff's Motion for Leave to File Sur-Reply is hereby GRANTED [60], *nunc pro tunc*. Accordingly, Defendant's Motion to Strike is hereby DENIED [52].

### iii.    *Defendant's Motion to Stay Discovery [28]*

SmartNews moves this Court to stay discovery pending resolution of bifurcated discovery briefing. In light of the Court's ruling denying the motion to bifurcate, this motion is hereby

rendered MOOT. Furthermore, upon entry of this Court's order on the pending motions herein, the current stay shall be lifted and new case deadlines shall issue in due course.

### 4. **Motion for Alternative Service [45]**

#### *a. Argument*

Pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, Plaintiff requests that it be allowed to serve Summons and Amended Complaint on foreign defendant SmartNews, Inc. through its attorney, Tyler Newby of Fenwick West LLP, or alternatively, through its wholly owned American subsidiary and alter ego, the Defendant. Defendant's Motion for Alternative Service of Process, Doc. [45] at 1. Plaintiff asserts Rule 4 allows for three possible avenues of service of a foreign defendant. Doc. [46] at 4. Plaintiff alleges the foreign defendant has failed to register to do business in any state in the U.S., but it is clearly engaged in intrastate commerce in the State of California. *Id.* at 2, 4. Plaintiff alleges that SmartNews is a foreign corporation that maintains corporate offices in San Francisco and Palo Alto, California, New York City, Beijing, Shanghai, and Tokyo. *Id.* at 1. Plaintiff claims SmartNews conducts intrastate business in California by re-publishing articles taken from California news websites and by earning revenue. *Id.* Plaintiff further claims California law requests foreign corporations engaged in intrastate business in the State to register with the California Secretary of State and designate a registered agent. *Id.* at 2. It contends the foreign defendant has failed to adhere to California law. *Id.* Plaintiff further claims the Defendant is incorporated and has a registered agent, and that it is the only subsidiary of SmartNews that is registered with a secretary of state in the U.S. *Id.*

Plaintiff argues that Defendant is deeply involved and intertwined in the development and operation of the SmartNews app. *Id.* at 3. It asserts the obvious inference is that SmartNews, Inc. formed SmartNews International, Inc. in order to conduct its business in the U.S. and other internation venues. *Id.* Plaintiff avers that SmartNews International, Inc. has openly acknowledged

that they also represent SmartNews, Inc. and has offered to accept service of process on the foreign defendant. *Id.* Thus, Plaintiff moves this Court to require that Defendant's counsel accept service on behalf of SmartNews. *Id.* It points out the Defendant has previously offered to accept service for SmartNews, in order to bypass the requirements of process via the Hague Convention, which it claims will cost approximately $10,000 and take approximately 6 months. *Id.* Plaintiff also admits that Defendant refuses to accept service, because Plaintiff will not agree to substitute the foreign defendant for the current Defendant. *Id.* Plaintiff is "not willing to drop [Defendant] until [it] know[s] more about the role it plays in the operation of the SmartNews app." *Id*. at 4.

In its Response in Opposition [54], Defendant contends, in the absence of an agreement between the parties, Plaintiff is required to serve SmartNews, Inc., pursuant to Rule 4 of the Federal Rules of Civil Procedure." Doc. [55] at 2. Defendant argues under the law of this Circuit, the Plaintiff is required to first attempt service under the Hague Convention before attempting to resort to other alternative means. Doc. [54]. Thus, it contends Plaintiff's motion should be denied on this failure alone. *Id.* at 9. However, Defendant also argues Plaintiff's request to serve SmartNews Inc.'s domestic subsidiary (Defendant) is improper, because it is not the alter ego of SmartNews Inc. *Id.* at 15. Defendant argues it is separate and distinct from the foreign defendant, other than sharing the same director. *Id.* at 6-7. Defendant contends there are no overlapping officers or directors, Defendant is responsible for its own managerial decisions, and the two entities do not share space or pay salaries/expenses of each other's employees. *Id.* at 7, 14-15. They also file separate tax returns. *Id.* Further, Defendant contends the request to serve domestic counsel of record is also improper, because this Circuit has adopted a stricter standard – that an actual authorized agent must accept service on behalf of the corporation. *Id.* at 18. Defendant argues domestic counsel is not authorized to accept service on behalf of SmartNews, Inc. *Id.* at 19.

Plaintiff replies, asserting that Defendant freely admits that SmartNews Inc. is a proper party to this lawsuit, and therefore its Motion must be granted. Plaintiff's Reply in Support of Motion for Alternative Service [59]. Further, Plaintiff contends the current Defendant and SmartNews, Inc. are joint tortfeasors and are both proper defendants in this action. *Id.* at 2. Plaintiff points to an affidavit, wherein Kotaro Suzuki states the current Defendant "primarily performs, and has full autonomy of, business development, marketing, and corporate functions relating to the U.S. version of the SmartNews app." *Id.* at 1-2.

Plaintiff denies any requirement that it must first attempt service through the Hague Convention, and it argues under Rule 4(f)(3), it may use alternative services that comport with due process. *Id.* at 3 (citing *Carl v. Amazon.com, Inc.* (S.D. Miss. May 31, 2023) 2023 U.S. Dist. LEXIS 94377, *8. Plaintiff also contends whether a domestic subsidiary is the alter ego of a foreign parent has no bearing on whether the parent can be served through the subsidiary. *Id* at 4. Plaintiff points to case law in this Circuit, wherein district courts have directed service on an international defendant's counsel under Rule 4(f)(3), even if counsel was not expressly authorized to accept service on the defendant's behalf. *Id.* at 6. Plaintiff reiterates its requests that this Court require counsel to accept service on behalf of its foreign client.

### b.  Analysis

Plaintiff, as the serving party, "bears the burden of establishing the validity of service," and "a court cannot exercise jurisdiction over a defendant not properly served." *Ariat Int'l, Inc. v. M/S Khemchand Handicrafts*, No. 3:23-CV-00342-M, 2024 WL 2885907, at *2 (N.D. Tex. June 6, 2024). In this case, Plaintiff requests that the Court permit service of process on a foreign defendant pursuant to Federal Rule of Civil Procedure Rule 4(f)(3).

Federal Rule of Civil Procedure Rule 4(h)(2) allows a foreign business entity to be served using any of the methods prescribed by Rule 4(f) for serving an individual. Rule 4(f) outlines

several methods for serving a foreign defendant, specifically providing three options: (1) an "internationally agreed means of service" authorized by the Hague Convention, (2) "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice," *or* (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)-(3). As clearly stated in the rule, service pursuant to Rule 4(f)(3) must be both authorized by the court and not violate any international agreement. The Supreme Court has not clarified how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3). *Lucero v. Wheels India, Ltd.*, No. 23-10494, 2023 WL 8622293 (5th Cir. Dec. 13, 2023). Additionally, the Fifth Circuit has not addressed whether there is a hierarchy among the service options outlined in Rule 4(f).

Plaintiff, in its *Memorandum in Support of its Motion for Alternative Service of Process on SmartNews, Inc.,* contends that each service method is equal to the others, and that the Court need not prioritize one method over another. To support this argument, Plaintiff cited *Gramercy Ins. Co. v. Kavanagh*, 2011 WL 1791241, at *1 (N.D. Tex. 2011), asserting that this case demonstrates there is no hierarchy among the service methods. [46]. Plaintiff further argues that there is no "preferred means of service" and that all three options provided in Rule 4(f) are equally valid. *Id.*

*Gramercy Ins. Co. v. Kavanagh* indeed establishes that there is no preferred means of service under Rule 4(f). *Gramercy Ins. Co. v. Kavanagh*, 2011 WL 1791241, at *1 (N.D. Tex. 2011). In that case, the plaintiff successfully served all defendants except one, Kennedy, who could not be located despite extensive efforts, including hiring a private investigator and consulting common counsel for Kennedy's address. *Id.* All defendants in the case were residents of the Republic of Ireland. *Gramercy Ins. Co. v. Kavanagh*, Amended Complaint ¶ 6 (Docket No. 3:10-

cv-1254D) (N.D. Tex. Sept. 15, 2010). Because the plaintiff was unable to physically locate Kennedy, the plaintiff moved for substitute service of process. *Gramercy Ins. Co.*, 2011 WL 1791241, at *1.

Instead of serving process pursuant to the Hague Convention, the plaintiff sought to serve Kennedy's attorney, who was common counsel for all defendants. *Id.* The plaintiff was aware that this attorney was representing Kennedy at the time of the attempted service. *Id.* The court granted alternative service of process on Kennedy through his attorney under Rule 4(f)(3). *Id.* at *2. In ruling on this motion, the court emphasized that it has broad discretion in ordering service under Rule 4(f)(3), as long as the service adheres to due process requirements of reasonable notice and an opportunity to be heard. The court found that serving Kennedy's attorney satisfied these due process requirements. *Id.* at *1. The court also noted that Kennedy's attorney had represented him as recently as less than a year prior to the order and was "the best available means of notifying Kennedy of the action against him and giving him an opportunity to defend the suit." *Id.* However, the court also mentioned that "use of Hague Service Convention procedures is mandatory if available at the place of service," and it determined that those procedures were inapplicable in this case because Kennedy's address was unknown. *Id.* For this Court, this raises a question of whether there is genuinely no hierarchy, or if the court merely found the Hague Service Convention Procedures inapplicable due to the defendant's unknown address.

The *Gramercy* court references two other cases to support its decision to grant the motion, including *Forum Financial Group, LLC. v. President, Fellows of Harvard College*, a District of Maine case. In *Forum Financial Group*, the plaintiffs "moved for court-directed service of process under Federal Rules of Civil Procedure 4(f)(3)." *F. Fin. Grp., LLC v. President, Fellows of Harvard Coll.*, 199 F.R.D. 22, 22 (D. Me. 2001). Specifically, they sought to serve a U.S. citizen

living in Russia through his attorney after multiple failed attempts at service. *Id.* The court had evidence that the attorney had "recently accepted service on [the defendant's] behalf in another federal case" involving similar issues. *Id.* The defendant's attorney opposed the motion, arguing that the court could not grant "court-direct service under Rule 4(f)(3)" unless the plaintiff first attempted service via means authorized by an applicable international agreement and those attempts proved unsuccessful. *Id.* The attorney also claimed that the requested method of service constituted "extraordinary relief" because the plaintiffs had not first attempted to serve the defendant by "letter rogatory." *Id.* The court disagreed and ruled that serving process on the defendant's attorney was acceptable. *Id.* The court reasoned that the Rule 4(f)(3) does not distinguish itself as an "extraordinary" method of service and that it is not "any less favored than service under subsections (1) and (2)." *Id.* The only limitation to Rule 4(f)(3), the court found, is that the court-directed means of service cannot be "prohibited by international agreement." *Id.* at 24. Given the defendant's "efforts to evade service in Russia" and his attorney's "recent acceptance of service on" his behalf in another case, the court determined that service of process on the attorney was appropriate and likely to satisfy due process requirements by providing reasonable notice of the case. *Id.* at 25. The court further noted that compliance with Russian law regarding court-directed service had no bearing on its order. *Id.*

Other cases within the Fifth Circuit Court of Appeals have similarly interpreted Rule 4(f), generally concluding that each method of service under the rule is equally valid. For example, in a Northern District of Texas case, the court allowed for process under Rule 4(f)(3) because it promoted "just, speedy, and inexpensive determination" of the action, ensured notice of the suit, and avoided the time and expense of service pursuant to Hague Convention procedures. *Ariat Int'l, Inc. v. M/S Khemchand Handicrafts*, 2024 WL 2885907, at *2 (N.D. Tex. June 6, 2024). In *Ariat*,

the plaintiff sued the defendant, an Indian business entity, for copyright infringement. *Id.* at *1. The plaintiff initially attempted service through Hague Convention procedures at two addresses in India. *Id.* Counsel for the defendant later attempted to discuss the litigation with the plaintiff, asserting that the defendant being served was not responsible for the alleged conduct, and suggested that two other foreign entities were "possibly the correct entities." *Id.* After discussions that blurred the lines of responsibility for the manufacturing of the product at issue, the plaintiff amended its complaint, leading to the dismissal of several defendants, and subsequently requested "non-Hague Convention service" on the remaining defendants. *Id.* at *1-2. The court, noting that alternative service of process is "placed squarely within the sound discretion of the court," allowed the plaintiff to serve the defendants via email and through their U.S. counsel. *Id.* at *2. The court clarified that there is no requirement under Rule 4(f) that the plaintiff must first serve "an internationally based defendant under Rule 4(f)(1) or Rule 4(f)(2) before authorizing service under Rule 4(f)(3)." *Id.* The court explained that "no such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes." *Id.* (quoting *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002)). Given the absence of a requirement for prior international service, the court determined that court-directed service under Rule 4(f)(3) saved the time and expense associated with Hague Convention procedures and ensured that the defendant would receive notice of the suit. *Id.* at *2. This conclusion was particularly strong since the defendants provided "no compelling reason" against permitting service via email and through their U.S. counsel, and because they had been aware of the lawsuit for "nearly a year." *Id.*

Similarly, an Eastern District of Texas Court found that alternative service of process under Rule 4(f)(3) was appropriate to prevent further delays in the case *Element Cap. Com. Co. Pte. Ltd. v. BOE Tech. Grp. Co.*, No. 2:22-CV-00118-JRG, 2022 WL 4368162, at *3 (E.D. Tex. Sept. 21,

2022). In this case, the plaintiff sued multiple foreign defendants for patent infringement. *Id.* at *1. The plaintiff initiated Hague service of process and sent letters, the complaint, exhibits, and service waiver forms to the defendants, requesting they waive service of process or identify their U.S. counsel. *Id.* The defendants refused receipt of the letters. *Id.* Subsequently, the plaintiff filed a motion asking the court to allow the plaintiff to serve the foreign defendants through service on their U.S. subsidiaries via traditional means. *Id.* The court granted the motion, allowing alternative service of process pursuant to Rule 4(f)(3). *Id.* at *3. The court stated that "authorizing court-ordered service 'by other means not prohibited by international agreement' - is 'not a last resort or a type of extraordinary relief for a plaintiff seeking to serve process on a foreign defendant'," but instead "'stands independently, on equal footing,' with other methods of service under Rule 4(f)." *Id.* at *2. However, it also noted that "'Rule 4(f)(3) was not meant to displace the other rules for service in every instance in which alternative means of service are seen as more convenient.'" *Id.* The court found alternative service appropriate here, considering the delay and expense of conventional service alongside other special circumstances justifying intervention. *Id.* Specifically, the "delay and the previous attempts of [the plaintiff] to effectuate service" were key factors favoring alternative service. *Id.* at *3. Without court-directed service under Rule 4(f)(3), the court determined there would have been further delays under the Hague Convention. *Id.*

In contrast, a recent case from the Southern District of Mississippi interpreted case law slightly differently. The court required that plaintiffs first attempt to serve the defendant via Hague Convention procedures before successfully requesting alternative service under Rule 4(f)(3). *Carl v. Amazon.com, Inc.*, No. 1:22-CV-191-LG-BWR, 2023 WL 1998875, at *5 (S.D. Miss. Feb. 14, 2023). In *Carl*, the plaintiffs attempted to serve the foreign defendants through various means, including mailing the summons and complaint in Chinese to the defendants' purported addresses,

but did not follow Hague Convention procedures in any of their attempts. *Id.* at *1. After several service attempts, the plaintiffs sought state court permission for alternative service via email. *Id.* The state court granted the motion, and the plaintiffs later filed a proof of service showing that the defendants had been served. *Id.* After the case was removed to federal court, the defendants moved to dismiss, arguing that service was insufficient. *Id.* at *2. The court noted that under Rule 4(f)(3), it may allow alternative service that "comports with constitutional notions of due process," even if the defendant's address is known and the Hague Convention applies. *Id.* at *4. However, the court concluded that, based on prevailing case law, alternative methods of service are only authorized after attempting service under the Hague Convention or when the defendant's address cannot be conclusively located. *Id.* Thus, the court held that the plaintiffs must first attempt Hague service before alternative methods would be granted. *Id.* at *5. Despite this holding, the court acknowledged that service under the Hague Convention "does not displace subsection (f)(3), which permits service by other means." *Id.* at *4.

One court determined that permitting service on the foreign defendant's counsel fell within the court's discretion and fulfilled the parties' duty to avoid unnecessary expenses. *WorldVentures Holdings, LLC v. Mavie*, No. 4:18CV393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018). In *Mavie*, the plaintiffs attempted to serve the defendants through various methods including delivering a sealed envelope with the complaint and summons to a Singapore address, using the Texas Secretary of State, and employing a courier. *Id.* at *3. Later in the case, after the defendants had actual notice of the suit, they challenged the method of service. *Id.* The court assessed whether the service was proper under Rule 4(f)(3). *Id.* at *13. Specifically, it questioned "whether the [c]ourt should exercise its discretion under Rule 4(f)(3) to permit service on" the defendants" through their U.S. counsel." *Id.* at *14. The court ultimately held that service on the defendants

through their U.S. counsel was appropriate. *Id.* at *16. It reasoned that "Rule 4(f) does not require that the plaintiff try to serve an internationally based defendant under Rule 4(f)(1) or 4(f)(2) before authorizing service under Rule 4(f)(3)." *Id.* at *13. Additionally, the court noted that the defendants failed to provide any justification for challenging the appropriateness of service under Rule 4(f)(3), and that "courts routinely direct service on an international defendant's counsel under Rule 4(f)(3)." *Id.* at *14. The court emphasized that federal rules aim for "the just, speedy, and inexpensive determination of every action and proceeding," and that there is a "duty" on the parties "to avoid unnecessary expenses of serving the summons." *Id.* Considering these factors and the need to avoid "unnecessary time and expense ordinarily needed to effectuate service on parties based thousands of miles away," the court allowed for service on the defendants' U.S. counsel. *Id.*

Looking to Fed. R. Civ. P. 4(f), *Gramercy*, and other cases, there does not appear to be a hierarchy between the service of process methods provided in Rule 4(f). As such, this Court concludes that so long as proper notice is provided, it is within this Court's discretion as to whether the alternative service of process method should be granted. This Court is particularly interested in *Gramercy*, as this is the case relied upon by Plaintiff. The undersigned finds that *Gramercy* establishes that there is no hierarchy among the choices listed in Rule 4(f). However, the current case is distinguishable from *Gramercy*. In that case, the Hague Convention procedures did not apply because the defendant's address was unknown, leading the court to forego consideration of service under the Hague Convention in favor of alternative means. The *Gramercy* court also noted that when Hague Convention procedures are applicable, service according to those procedures are mandatory. In contrast, the physical location of the foreign Defendant in the present case is known to the parties, and the Defendant corporation is a resident of Japan, a country that has adopted Hague Convention procedures. Thus, Plaintiff is fully able to comply with the Hague Convention

procedures. Plaintiff is merely asking for an alternative service of process means given that the foreign Defendant now has actual notice, the prior statement by the Defendant's counsel allowing for alternative service of process, the high costs and time involved with service pursuant to the Hague Convention procedures, among other things.

If Plaintiff wishes to serve the foreign Defendant in Japan, they must adhere to Hague Convention provisions, as both the U.S. and Japan are signatories to the Hague Convention. However, serving the foreign Defendant's U.S.-domiciled attorney means the Hague Convention does not apply, since the "Hague Convention applies only to service outside of the United States." Christopher Randolph, *Effecting Service on Foreign Defendants*, 39 Ala. Ass'n Just. J. 33 (Fall 2018). Instead, the law of the forum would "govern sufficiency of service of process," and it is up to the forum to determine if serving the Defendant's U.S. attorney provides adequate notice to the foreign defendant, "without regard to the Hague Convention's procedures." *Id.* While compliance with the Hague Convention would be mandatory if Plaintiff served the Defendant in Japan, service on Defendant's counsel within the U.S. does not require such compliance, eliminating the need for a Hague Convention analysis.

While the factual dissimilarities between the main case relied upon by Plaintiff and the present case are apparent, the interpretation of the Rule 4(f) remains applicable. The Texas court and courts elsewhere have interpreted Rule 4(f) to provide no preference among the permitted methods of service. *See* FPP § 1134 (Wright & Miller)(2024). Additionally, there are factually similar cases where courts allowed service of process on a foreign defendant's attorney or through other means instead of following Hague Convention procedures to conserve time and resources. For example, this case closely resembles *WorldVentures Holdings, LLC*. In this case, as in that one, Plaintiff attempted to collaborate with counsel to effectuate service of process on the foreign

defendant but was unsuccessful. Both cases involved foreign defendants who eventually received actual notice of the suit but challenged the method of service used by the plaintiffs. The court in *WorldVentures*, just like this Court, had to determine whether service of process on the foreign defendant's domestic counsel was proper under Rule 4(f)(3). Allowing alternative service in this case, pursuant to Rule 4(f)(3), would align with the reasoning in *WorldVentures*, as it would promote a just, speedy, and inexpensive resolution of the action, avoid unnecessary time and expenses, and remain within the Court's discretion.

Additionally, this case is analogous to *Ariat* and *Element*. Like the confusion over entity identities in *Ariat*, there have been conflicting statements regarding the identity of the foreign Defendant and whether the U.S. company or the foreign company is responsible for the alleged conduct. This confusion has led to amended complaints, potential dismissal of defendants, and motions for alternative service of process in both *Ariat* and the present case. Given that the court in *Ariat* determined there was no requirement for service pursuant to Rule 4(f)(1) in this very similar situation, or any other situation, before service pursuant to Rule 4(f)(3), this court could likewise find service pursuant to Rule 4(f)(3) is appropriate. Allowing alternative service in this case would save both the court and the parties time and costs associated with Hague Convention service of process, as the court found in *Ariat*. Moreover, alternative service will ensure, since the foreign Defendant here, like in *Ariat*, has had actual notice of the case for some time. Similarly, *Element* supports granting the motion for alternative service. In *Element*, the court allowed for service under Rule 4(f)(3) due to delays and the plaintiff's previous attempts to serve the foreign defendant. All of those factors are present in the current case and support service through the foreign Defendant's U.S. counsel.

While some case law suggests that parties should first attempt service under the Hague

44

Convention procedures before the Court permits alternative service of process, the Court has discretion in this matter. In *Carl*, for instance, the court reviewed cases interpreting Rule 4(f)(3) and noted that plaintiffs typically attempted Hague Convention service before seeking alternative means. Just as the court in *Carl* required the parties to first try serving the foreign defendant under the Hague Convention, this court could impose a similar requirement. However, there is ample support providing that Rule 4(f)(3) is a viable option for service that holds equal weight to Rules 4(f)(1) and 4(f)(2).

The court also has considerable discretion in deciding whether to grant the *Motion for Alternative Service of Process*. Although the cases cited by Plaintiff differ factually from the present case, they support the notion that there is no hierarchy among the methods of service for a foreign defendant outlined in FRCP 4(f). Courts have consistently interpreted the plain language of the rule, viewing each option in Rule 4(f) as equally valid for serving a foreign defendant. Numerous cases in federal districts have permitted service on a foreign individual's attorney within the United States. In this case, serving U.S. counsel is likely to meet due process requirements, as it will provide sufficient notice to the foreign Defendant because the attorney is recognized as the attorney of record for the foreign Defendant, and the corporation's officers and U.S. subsidiary are already involved in the ongoing suit. While the court agrees that service on counsel of record would be convenient, allowing it at this juncture would be premature, as Plaintiff has not yet joined the foreign defendant or attempted service. Thus, the Court mandates that Plaintiff first attempt service through the Hague Convention. After service is attempted, if Plaintiff makes a sufficient showing of failed attempts, then this Court may revisit the request for an alternative method allowing court-directed service under Rule 4(f)(3). In light of these considerations, the court DENIES WITHOUT PREJUDICE Plaintiff's *Motion for Alternative Service of Process* [45] and

directs the Plaintiff to first attempt service under the Hague Convention before seeking alternative services that comport with due process.

## **CONCLUSION**

1. IT IS THEREFORE ORDERED that Plaintiff's First Motion to Amend/Correct Complaint [26] is hereby GRANTED. Plaintiff is ordered to file its corrected complaint within fourteen (14) days of this order.

2. IT IS FURTHER ORDERED that Plaintiff's Substitute Motion for Leave to File First Amended Complaint [64] is hereby GRANTED. Plaintiff is ordered to file its substituted complaint within fourteen (14) days of this order.

3. IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Add Defendant [32] is hereby GRANTED. Plaintiff is ordered to file its substituted complaint, joining SmartNews, Inc., within fourteen (14) days of this order.

4. IT IS FURTHER ORDERED that Plaintiff's Second Motion for Leave to Add Defendants [65] is hereby GRANTED. Plaintiff is ordered to file its amended complaint, joining as individual defendants, corporate officers Suzuki and Hamamoto, within fourteen (14) days of this order.

5. IT FURTHER ORDERED that Defendant's Motion to Bifurcate Discovery [36] is hereby DENIED.

6. IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply [60] is hereby GRANTED, *nunc pro tunc*. Accordingly, Defendant's Motion to Strike Sur-Reply [52] is hereby DENIED.

7. IT IS FURTHER ORDERED that Defendant's Motion to Stay Discovery [28] is MOOT. In light of the Court's ruling denying the motion to bifurcate, this motion is hereby rendered MOOT.

8.   IT IS FURTHER ORDERED that Plaintiff's Motion for Alternative Service of Process [45] is hereby DENIED WITHOUT PREJUDICE. Plaintiff is directed to first attempt service under the Hague Convention before seeking alternative methods of service of process.

**SO ORDERED**, this the 11th day of July 2025.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE